IN RE INTEREST OF TEELA H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. KATHY H., APPELLANT.

529 N.W.2d 134

Filed March 28, 1995.   No. A-94-758.

Byron M. Johnson, Scotts Bluff County Public Defender, and W.E. Madelung for appellant.

Deborah A. Birgen, Deputy Scotts Bluff County Attorney, for appellee.

Michelle M. Dreibelbis, guardian ad litem.

IRWIN and MILLER-LERMAN, Judges, and MORAN, District Judge, Retired.

IRWIN, Judge.

## INTRODUCTION

Kathy H. appeals the orders of the county court for Scotts Bluff County, Nebraska, sitting as a juvenile court, terminating unsupervised visitation with her child, Teela H., at Kathy's residence in Cheyenne, Wyoming; denying her motion to return custody of Teela to her; and granting her supervised visitation in Scottsbluff, Nebraska, "as recommended by Dr. [James]

Sorrell." For the reasons hereafter stated, we dismiss in part, in part reverse, and remand with directions.

## FACTUAL BACKGROUND

Kathy H. is the natural mother of Teela H., born December 29, 1991. A deputy Scotts Bluff County Attorney filed a petition on June 3, 1992, alleging that Teela lacked proper parental care under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) by reason of the fault or habits of Kathy. Teela was ordered to remain in the temporary custody of the Department of Social Services (DSS). After a July 14, 1992, hearing on Kathy's motion for temporary custody, Teela was returned to Kathy on a trial basis pending further hearing. On August 14, Teela was returned to the temporary custody of DSS. Subsequently, Kathy moved to live with her boyfriend in Cheyenne, Wyoming, where she continues to reside.

On August 28, 1992, an adjudication hearing was held on the juvenile petition, at which time Kathy pled the equivalent of a no contest plea to the allegations. The court found Teela to be a juvenile within the meaning of § 43-247(3)(a) and placed her in the custody of DSS.

At an October 22, 1992, dispositional hearing, the court adopted DSS' case plan of October 21, 1992, and ordered Kathy to comply with the plan. The October 21 plan had two parts. The first part set a target date of February 1993 to establish Dave and Nancy C. as guardians for Teela. The guardianship was supported by Kathy, Dave and Nancy, and DSS. The second part was a rehabilitative plan in the event Kathy changed her mind about the guardianship. It established the following goals: Kathy was to remain sober, she was to attend two Alcoholics Anonymous (AA) meetings each month, she was to meet with an alcohol counselor, she was to complete a parenting class, she was to obtain her GED, and she was to attend individual counseling to deal with her background of being an abused child. The court also ordered unsupervised visitation of two weekends per month.

Prior to December 1993, Kathy was averaging one visit per month and had also had one full-week visit in Cheyenne and three overnight visits in Scottsbluff and had maintained regular

phone contact with Dave and Nancy. From December 1993 to April 1994, Kathy continued to visit Teela in Scottsbluff, and Teela went to Cheyenne on a couple of occasions.

At some point in December 1993, Kathy decided that she wanted to regain custody of Teela. At that time, the court apparently ordered visitation every weekend with Kathy in Cheyenne and that Kathy comply with the rehabilitative plan. This plan involved alcohol evaluations of Kathy and her boyfriend, parenting classes, the completion of a home study by the Wyoming Department of Social Services, and Kathy's cooperation with that department in Wyoming and DSS in Nebraska.

On November 29, 1993, Kathy filed a motion to return custody of Teela to her. On February 11, 1994, a hearing was held on Kathy's motion. The court took this matter under advisement and later, according to a February 17, 1994, letter, intended to overrule it.

On July 8, 1994, a review hearing was held. According to the testimony at trial, Kathy was attempting to comply with the rehabilitative plan. Kathy had completed parenting classes. Kathy was attending AA meetings, family dysfunction counseling, additional parenting classes, and college-level courses at a local junior college. Kathy's boyfriend had received an alcohol evaluation which indicated that he did not have an alcohol problem. Melody Wilson, a social worker in Cheyenne, testified that she had completed a home study report and found Kathy's home and family appropriate. Wilson recommended reunification.

According to the record, in May 1994, about 1 month after the weekly weekend visits to Cheyenne began, Teela, age 2½ years, began exhibiting behavioral problems. Teela seemed angry and was kicking, spitting at, and hitting people. Teela refused to associate with the people who normally took her to Cheyenne. On Thursday nights before visitation, Teela would become very agitated, angry, and "clingy" to Nancy.

On June 6, 1994, Dr. James Sorrell, a psychiatrist, examined Teela. He diagnosed Teela as suffering from severe separation anxiety. In a letter dated July 6, 1994, that was offered and received at trial, Dr. Sorrell opined that Teela was emotionally

attached to Dave and Nancy and was reacting to the threatened loss of this relationship. He made the following recommendations: The weekend visits should be terminated, Kathy should be granted supervised visitation with Teela in Scottsbluff, and Teela should continue to receive counseling from Dr. Sorrell and Ellen Jensen, a play therapist.

According to the record, Jensen had met with Teela for nine sessions. Jensen felt that Teela was emotionally invested in Dave and Nancy and overtly neutral with respect to Kathy. Jensen opined that Teela fears that Dave and Nancy, her parent figures, will be taken from her, and Teela is angry, sad, and frustrated.

Kelly Case, the DSS social worker assigned to this case, testified that she still recommended the completion of the guardianship with Dave and Nancy. She stated that this recommendation was based upon Teela's anxiety disorder and the period of time she has been in the care of Dave and Nancy, not Kathy's failure to comply with the plan. Case testified that since approximately January 1994, Kathy had complied with most of the recommendations in the rehabilitative plan. In the event that reunification remained the goal, Case testified that she would ask Dr. Sorrell to develop a plan indicating what he sees as timeframes for Kathy's visits with Teela and therapy sessions with the doctor and Teela.

In a journal entry filed August 2, 1994, the county court ordered that the unsupervised weekend visits to Kathy's residence in Cheyenne be terminated and that "visitation by the mother of the juvenile be held in Scottsbluff, Nebraska and shall be supervised by the Department of Social Services as recommended by Dr. Sorrell." This appeal followed.

## ASSIGNMENTS OF ERROR

Kathy asserts the following: (1) The juvenile court abused its discretion when it denied her motion to return custody despite the completion of the conditions set forth in the rehabilitative plan, (2) the juvenile court violated her due process rights by failing to return Teela to her custody and by not setting conditions by which a return may be effected and that were within her ability to perform, and (3) the juvenile court

improperly delegated its authority to determine parental visitation rights.

### STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of J. T.B. and H.J. T.*, 245 Neb. 624, 514 N.W.2d 635 (1994).

■ Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of the conclusion of the trial court. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994); *In re Interest of Kelly D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994).

### DISCUSSION

*Letter Ruling from the Court Dated February 17, 1994.*

The first two assignments of error concern the February 17, 1994, letter that "overruled" Kathy's motion to return custody. We lack jurisdiction to entertain an appeal regarding the first two assigned errors for the following reasons.

■ The timeliness of an appeal is a jurisdictional necessity and may be raised by an appellate court sua sponte. *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994). Neb. Rev. Stat. § 25-2729 (Cum. Supp. 1994) requires that

[i]n order to perfect an appeal from the county court, the appealing party shall within thirty days after the rendition of the judgment or making of the final order complained of:

(a) File with the clerk of the county court a notice of appeal; and

(b) Deposit with the clerk of the county court a docket fee . . . .

Section 25-2729(3) states:

The time of rendition of a judgment or making of a final order is the time at which the action of the judge in announcing the judgment or final order is noted on the trial docket or, if the action is not noted on the trial docket, the time at which the journal entry of the action is filed.

■ The trial docket sheet contained in the transcript has a written entry regarding the February 11, 1994, hearing

reflecting those present and the evidence adduced. A journal entry states that the court took the matter under advisement and would inform the parties by letter of its decision. The only indication of the court's decision regarding Kathy's November 29, 1993, motion is an unfiled letter from the court, dated February 17, 1994, which indicates that it was sent to the parties. This letter is not the equivalent of an oral pronouncement of the judgment in open court. See *Tri-County Landfill v. Board of Cty. Comrs.*, 247 Neb. 350, 526 N.W.2d 668 (1995) (holding that a district court's letter to counsel is not the equivalent of an oral pronouncement of the judgment in open court pursuant to Neb. Rev. Stat. § 25-1301 (Reissue 1989)). The final order of the court is not on the trial docket, nor is there a journal entry filed. Thus, judgment has not yet been rendered on Kathy's November 29, 1993, motion, nor has a final order been made upon it.

Since there is no final, appealable order in regard to the above motion, we lack jurisdiction regarding these two assigned errors.

*August 2, 1994, Order.*

We will discuss the appellant's assigned error concerning the August 2, 1994, order, as it is properly before us. Kathy argues that the county court improperly delegated its authority to determine parental visitation rights to DSS and Dr. Sorrell. This argument is based upon the following language in the August 2 order: "[V]isitation by the mother of the juvenile [shall] be held in Scottsbluff, Nebraska and shall be supervised by the Department of Social Services as recommended by Dr. Sorrell."

A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question. *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990). Unless the language used in a judgment is ambiguous, "the effect of the decree must be declared in the light of the literal meaning of the language used." *Bokelman v. Bokelman*, 202 Neb. 17, 21, 272 N.W.2d 916, 919 (1979). A judgment is ambiguous if a word, phrase, or provision has at least two reasonable but conflicting meanings. *Kerndt, supra.* However, the fact that the parties have suggested opposing meanings of the disputed instrument does

not necessarily compel the conclusion that the instrument is ambiguous. *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). Based on the language in the August 2, 1994, order, we conclude that the plain and unambiguous meaning of that order is that Dr. Sorrell shall determine the frequency and manner that Kathy is allowed supervised visitation of Teela. This interpretation is based upon the language of the order, not upon what the parties believe the court meant but did not say. See *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986).

Our conclusion regarding the import of the order is consistent with the evidence. Case testified that she would recommend that Dr. Sorrell construct the case plan. Dr. Sorrell gave a general recommendation that the Wyoming visits be terminated and that visits be supervised in Scottsbluff. He did not provide any suggested visitation schedule which the court could have been attempting to adopt.

The next question is whether a juvenile court may leave the amount, time, and manner of parental visitation with an adjudicated juvenile to the discretion of a third party. Neb. Rev. Stat. § 43-285(1) (Reissue 1993) states: "When the court awards a juvenile to the care of the Department of Social Services, an association, or an individual" in accordance with the Nebraska Juvenile Code, "such association and the department shall have authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it." Section 43-285 does not authorize DSS or any other third party to determine or place restrictions on parental visitation rights. *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990). Parental visitation rights, as a subject within the Nebraska Juvenile Code, are matters for judicial determination. *In re Interest of C.A., supra*. The rule that custody and visitation of minor children are to be determined on the basis of their best interests "clearly envisions an independent inquiry by the court." *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 743, 272 N.W.2d 40, 42 (1978).

In *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980),

where a parent requested a divorce decree be modified to grant specific visitation privileges, the trial court denied the request and ordered the parent and the children to attend psychological counseling. Apparently, the court allowed the psychologist to determine when and how often the counseling would occur. The Nebraska Supreme Court held that "the trial court's order placing in a psychologist the authority to effectively determine visitation, and to control the extent and time of such visitation, is not the intent of the law and is an unlawful delegation of the trial court's duty." *Id.* at 200, 297 N.W.2d at 762. The Supreme Court has also held that it is plain error for a juvenile court to require that a parent " 'participate in Parents United support group on a regular basis *and follow all directions of the counselor.* " (Emphasis supplied.) *In re Interest of D.M.B.*, 240 Neb. 349, 362, 481 N.W.2d 905, 914 (1992). The court stated: "It is the court's duty, not that of counselors, Department of Social Services workers, social workers, child protection workers, or probation officers to fix the terms and limitations of a rehabilitation provision." *Id.* at 362, 481 N.W.2d at 914-15.

The county court granted Dr. Sorrell the authority to determine the time, manner, and extent of Kathy's visits with Teela. In so doing, the county court, like the trial courts in *Deacon* and *In re Interest of D.M.B.*, delegated a matter for judicial determination to a third party. We hold that the county court improperly delegated its authority to determine parental visitation rights to Dr. Sorrell and in doing so committed reversible error. We reverse the August 2, 1994, order of the county court and remand this matter with directions to determine visitation privileges if and when appropriate.

APPEAL DISMISSED IN PART, AND IN PART
REVERSED AND REMANDED WITH
DIRECTIONS.