IN RE INTEREST OF ZACHARY L., A CHILD UNDER 18 YEARS
OF AGE.
STATE OF NEBRASKA, APPELLEE, V. GAIL L. AND ROBERT L.,
APPELLANTS.

543 N.W.2d 211

Filed February 6, 1996.   No. A–95–391.

Robert F. Martin, P.C., and Connie Kearney for appellants.

Dean Skokan, Dodge County Attorney, and Sandra Silva for appellee.

HANNON, IRWIN, and MILLER–LERMAN, Judges.

HANNON, Judge.

Gail L. and Robert L., the parents of Zachary L., appeal from an order dated March 8, 1995, in which the juvenile court

(1) retained temporary custody of Zachary with the Department of Social Services (DSS), (2) continued to deny the parents visitation, (3) required them to pay $208 per month for Zachary's support, (4) required DSS to submit "long term foster home recommendations" by April 5, and (5) set a hearing for May 24. Since all of the assigned errors, except the alleged error concerning long-term foster care, relate to issues that were settled by previous orders of the court upon which the time for appeal has passed, and since the court had not ruled upon the long-term foster care issue, we conclude that we do not have jurisdiction over any of the matters appealed. We therefore dismiss the appeal without reaching the errors assigned.

## PROCEDURAL HISTORY

We are supplied with a bill of exceptions that contains a record of only the March 8, 1995, hearing, but the transcript contains orders resulting from a temporary detention hearing, the adjudication hearing, the dispositional hearing, and postdispositional hearings, all of which are described later in this opinion. The record before this court may be summarized as follows:

On March 4, 1994, a temporary detention hearing was held which resulted in Zachary's temporary custody being placed with DSS, with his parents being allowed a minimum of three supervised visits per week. On March 8, 1994, the prosecuting attorney filed a petition alleging that Zachary, a minor born on September 4, 1991, was a child as defined under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) in that his parents neglected or refused to provide proper or necessary subsistence, education, or other care necessary for his health, morals, or well-being or that they are in a situation or engage in an occupation dangerous to his life or injurious to his health or morals.

In its journal entry of the June 8, 1994, adjudication hearing, the court found that when Zachary was removed from his home he required hospitalization and that medical testing showed Zachary was malnourished and deprived of emotional nurturing and love while in his parents' custody. The court found that Zachary was a child as described in § 43-247(3)(a) in that "the parents refuse to provide proper and necessary subsistence and

care necessary for the health of the juvenile and the juvenile was in a situation dangerous to his life and injurious to his health." The court also made general findings, ordered the child to remain in the custody of DSS, and ordered visitation to continue as previously ordered. The transcript shows that the adjudication order was appealed to the district court and affirmed by that court.

On August 3, 1994, a dispositional hearing was held. The juvenile court made only generalized findings and found that it could not approve any rehabilitation plan until the parents obtained a psychiatric evaluation. In summary, the court ordered (1) that Zachary's custody was to remain with DSS; (2) that the "Visitation Plan" was approved, subject to unsupervised visitation being allowed only upon written approval by the court; and (3) that the parents should obtain a psychiatric examination, become fully involved in individual and family therapy, follow the therapist's recommendations, utilize the services of a family support worker, complete the Boys Town parenting class, obtain an appropriate support system, develop a recreation and leisure plan meeting the approval of the case manager, utilize the services of a nutritionist if requested by the case manager, pay $208 per month for Zachary's support, and maintain medical and health insurance covering Zachary.

In an order dated October 26, 1994, the court made several general findings and then assented to the "Case Plan and Court Report and the Visitation Plan, which meet the reasonable requirements." That journal entry then goes on to order, in summary, that custody should remain with DSS, with the parents being allowed supervised visitation of at least 1 hour per week. The order also requires the parents to follow substantially the same procedures for therapy, child support, health insurance, nutrition, and the other directions as required by the order of August 3.

The transcript contains a journal entry of an "evaluation" hearing held on January 25, 1995. This order contained most of the same findings and directions as the previous orders, but it provides that "[d]ue to the lack of sufficient progress and not being in the juvenile's best interest, the supervised visits . . . are hereby terminated." The order also provides that "should

[the parents] wish to be considered for a placement for Zachary, they shall become fully involved in individual and family therapy and follow all recommendations of the therapist," which shall include weekly therapy sessions for the parents; play therapy for their daughter, Cassandra L.; evaluation by a pediatrician for another son, Trevor L., regarding his diet; and the requirement that the parents are to follow the recommendations of all doctors regarding care of their children. This order also includes a restatement of other elements such as a leisure plan, child support, and similar general matters contained in the previous orders. No appeal was taken from the order.

On January 31, 1995, the parents filed a motion for reconsideration of the order terminating their visitation. The record does not show that the court ruled on this motion.

The transcript contains a journal entry of a February 1, 1995, hearing. This order contains findings substantially the same as the findings and orders of the January 25 order. It provides that custody shall remain with DSS and that the temporary rehabilitation plan to achieve visitation shall include the items summarized as follows: (1) The parents must provide proof of health insurance for Zachary by February 8, 1995; (2) they must make a doctor's appointment for Trevor; (3) they must cooperate with the family support worker and demonstrate a willingness to "invest themselves in the services offered by the family support worker"; (4) they must discuss, decide on, and inform the case manager of an appropriate support system for themselves and their children; (5) they must sign a release of their complete file to Dr. Judith Libow in California; (6) Gail must sign a release to allow mental health records to be released to her therapist; and (7) the parents must begin work on therapeutic goals. The order provides that each of the last six items shall be done by February 15. The order also provides that the matter be continued until March 8.

The bill of exceptions contains only a record of the "evaluation" hearing of March 8, 1995. The issue that can be decided by this appeal requires only a quick summary of the evidence adduced at that hearing. The State produced a family support worker, a DSS worker, and a court-appointed special

advocate volunteer. These witnesses had observed Zachary during visitations with his parents and while he was in his foster home. The effect of this evidence was that during visits, the parents and siblings frequently did not include Zachary in their activities, and that Zachary generally did not like the visits. The State's evidence tended to establish that Zachary frequently did not want to go on home visits and that since the visits have stopped, his aggressive behavior has ceased and he sleeps better, plays by himself, seems happier and more content, and has not asked his foster parents about his parents. The State's witnesses also testified in person or by letters to the several ways in which the parents failed or refused to comply with the various orders summarized above. Since we are dismissing this case on jurisdictional grounds, we do not consider the admissibility of this evidence, or its sufficiency.

At the conclusion of the hearing, the court stated that it was difficult to work with Zachary's parents unless they admitted that there was serious wrongdoing by one of them and that Zachary was seriously endangered. The court stated that because of Robert's "passivity" and Gail's "aggressivity," it had entered an order stopping visitation with a chance to allow them to rehabilitate themselves, but that they had not done so. The court also stated that if they do not make any changes, it is clearly not in Zachary's best interests to have contact with them. The court ordered that the visitation be suspended until the parents were willing to cooperate and to make some changes. The court stated it would continue the hearing until May 3, 1995, to make a determination on the recommendation for long-term foster care. The court stated, "I might add Mr. and Mrs. [L.], that gives you an opportunity between now and May 3rd to make some admissions, to make some changes, and to invest in the appropriate changes so that [Zachary] can have contact with you." At that point, a DSS official interjected that it would take 6 to 8 weeks for Dr. Russell Alexander to make a diagnosis and report back. The court concluded a 10-week delay would be necessary and set the next hearing for May 24.

The journal entry of the March 8, 1995, hearing is short, and in it the court made the usual general findings and then ordered that temporary custody shall remain with DSS, that due to lack

of "sufficient therapeutic progress" the parents shall not have visitation until they comply, that they shall continue to pay $208 per month child support, and that DSS shall submit long-term foster home recommendations by April 5. The court continued the hearing until May 24.

## ASSIGNMENTS OF ERROR

Zachary's parents allege the court erred (1) in placing Zachary with DSS for long-term foster home placement, (2) in terminating their visitation with Zachary, (3) in finding Zachary must be placed outside of the home and that no services were available to keep him in the home, (4) by admitting exhibit 40 and the hearsay and opinion testimony of the State's witnesses, (5) in finding that the therapeutic goals and rehabilitation plan were reasonable, and (6) in denying the parents effective counsel and due process. In the argument portion of the parents' brief, it is clear that the alleged denial of effective assistance of counsel and due process is based upon the fact that the parents' trial counsel did not object to the hearsay and opinion evidence of the witnesses and the letters containing information from the parents' therapists and one of the witnesses. We dispose of this case on jurisdictional grounds and do not reach the assigned errors.

## STANDARD OF REVIEW

■ We dispose of this appeal on legal issues. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of the conclusion of the trial court. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

## DISCUSSION

■ The adjudication of Zachary as a child defined under § 43–247(3)(a) was appealed and affirmed. A dispositional hearing was held on August 3, 1994, and the parents' visitation rights were terminated on January 25, 1995. This is an appeal from an order dated March 8, 1995. The substantive orders complained about in this appeal were entered prior to the March 8 hearing and order. We must first decide whether this court has jurisdiction over the substantive matters appealed. Subject

matter jurisdiction may be raised sua sponte by an appellate court. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992); *In re Interest of Kelly D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994). The order of January 25 which deprived the parents of visitation with Zachary was merely continued and refined by the orders of February 1 and March 8. The question of jurisdiction arises on our own motion in two respects: Is the appeal timely? Did Zachary's parents lose their right to appeal the termination of their visitation rights when they failed to appeal from the order of January 25?

The notice of appeal in this case was filed on April 13, 1995. The journal entry of the March 8 order was not filed with the clerk of the county court until March 13. Under Neb. Rev. Stat. § 25–2729(3) (Cum. Supp. 1994), the effective date of that order is March 13, 1995, and therefore the notice of appeal from that order was filed within the 30 days provided in § 25–2729(1). However, any attempt to appeal the orders of January 25 or February 1 is clearly too late because the journal entries of those orders were filed shortly after the dates they bear. The January 25 order terminated visitation with Zachary, and the February 1 order provided for a rehabilitation plan and set forth guidelines in order for the parents to achieve visitation.

▮ The order of March 8, 1995, did not change the orders regarding visitation, but it made clear that the parents could regain visitation by complying with previous orders. A review of the transcript shows the court terminated the parents' visitation by the order that was dated January 25, 1995, and filed January 26. An order terminating visitation is a final order. See *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995). Thus, the order of January 25 was an appealable order. The order of February 1 does not purport to terminate visitation, but supplies guidelines for the parents to achieve visitation with greater specificity than the January 25 order. The order of February 1 could have been appealed on any issue dealing with any new term it imposes, but not on the issue of termination of visitation or the terms contained in the January 25 order. The order of March 8 does not change either of the previous orders with respect to the termination or suspension of visitation. It clarified that visitation could be restored if the

parents comply with the court's orders, and if anything, it is more favorable to the restoration of the parents' visitation than the previous orders.

The timeliness of an appeal is a jurisdictional necessity and may be raised sua sponte. *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994); *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994). A comparison of the assignments of error with the order of March 8, 1995, shows that it mandates nothing new and imposes no new requirements—at least it mandates no activity that is assigned as an error in this appeal. The court indicated that long–term foster care for Zachary would be considered at a later hearing. It should take no authority to establish that the March 8 order does not contain an appealable error on the issue of long–term foster care. The alleged errors in placing Zachary outside of the home and in finding the therapeutic goals and the rehabilitation plan reasonable were settled in previous hearings, of which we do not even have a bill of exceptions. The same is true with regard to the termination of visitation. These assignments attempt to relitigate settled issues. The assignment of these errors represents a collateral attack. "Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter . . . . Such challenges should timely have been made after the adjudications, which were final orders . . . ." *In re Interest of C.W. et al.*, 239 Neb. 817, 822, 479 N.W.2d 105, 110 (1992).

In *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986), the court entered a second order about 6 weeks after its first order, and the orders were similar except that the second contradicted the first on one point. The notice of appeal was held to have been timely filed with regard to the second order, but untimely with regard to the first order. The Supreme Court held that an appellate court has jurisdiction over those assignments of error that raise an issue with respect to that portion of an order entered within the 30 days preceding the perfection of the appeal that contradicts an order entered more than 30 days before the appeal was perfected, but not over the assignments of error which deal with those portions of the

second order that were consistent with the first order. The same principle must apply in juvenile cases, where each order affecting a substantial right may be appealed. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). However, in the case at hand, the assignments of error do not relate to any portion of the March 8, 1995, order that was inconsistent with the earlier orders. If the order of March 8 changed any previous orders, the parents are not complaining about that change. They are simply complaining about the previous orders. This appeal is therefore an attempt to appeal after the time for appeal has expired. We do not have jurisdiction to entertain an appeal raising issues in a juvenile case that settled a substantial right more than 30 days before the appeal was perfected. We must therefore dismiss this appeal without discussing the issues raised.

We discuss one other point, lest our not discussing it might imply a decision on it. In *In re Interest of R.G., supra*, Justice Caporale traced the statutory and case law basis controlling appeals from orders in juvenile courts which do not end the case involved. There is no point in our retracing those steps. In that case, the Supreme Court concluded that an order in a juvenile case is appealable if it affects a substantial right, and then stated:

> [T]he question of whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

238 Neb. at 415, 470 N.W.2d at 788. Under that holding, this court has held that an order terminating visitation is a final order. See *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995). However, under *In re Interest of R.G., supra*, not all orders "terminating" visitation are appealable, because by their terms they might not operate for a long enough period of time. Unlike the court's order dated January 25, 1995, in which it rendered its decision to terminate visitation in this case, the March 8 order made clear that visitation would be restored to the parents by the court if they would comply with the previous orders with regard to therapy, et cetera, and the

court set a later hearing date to check their compliance. Stated in another way, the order of March 8 might be more properly referred to as a temporary suspension order rather than a termination order. There is at least a question of whether the length of time over which the order of March 8 could reasonably be expected to disturb the parents' visitation with Zachary is sufficient to make that order a final order. We do not decide this issue, because it is unnecessary to do so. The appeal must be dismissed for lack of jurisdiction for the reasons stated above.

APPEAL DISMISSED.