IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF EKKO R.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF EKKO R., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CRUZITA J., APPELLANT.

Filed March 21, 2023.    No. A-22-671.

Appeal from the Separate Juvenile Court of Sarpy County: JONATHON D. CROSBY, Judge. Affirmed as modified.

Katrine M. Herrboldt for appellant.

Andrew T. Erickson, Deputy Sarpy County Attorney, and Octavio Edgington, Senior Certified Law Student, for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Cruzita J. appeals from an order of the separate juvenile court of Douglas County terminating her parental rights to her minor child. Upon our de novo review, the juvenile court's order is affirmed as modified.

BACKGROUND

Cruzita is the mother of Ekko R., born in 2017. On March 29, 2019, the State filed a petition alleging Ekko was a minor child as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), due to the lack of proper parental care by reason of the faults or habits of Cruzita. The petition further alleged: (1) on March 29, 2019, Ekko was removed from parental care after Cruzita was

- 1 -

arrested for driving under the influence of alcohol while Ekko was in the car; (2) on March 29, 2019, a Nebraska Department of Health and Human Services (DHHS) safety plan was created due to concerns of domestic violence in the home. Ekko previously was a state ward in New Mexico from her birth until December 2017 due to Cruzita's use of substances and domestic violence in the home; and (3) in July 2018, Cruzita took Ekko to a street median for the purpose of soliciting money from others, despite having a home and job. On February 25, 2019, law enforcement was called to Cruzita's home due to domestic violence in Ekko's presence. On November 2, 2018, Cruzita was arrested for reckless driving. At the time, law enforcement learned that she had left Ekko, who was one-year old, home alone.

Ekko was removed from Cruzita's care and placed in the temporary custody of DHHS. On June 3, 2019, the court entered an adjudication order finding Ekko was within the meaning of § 43-247(3)(a).

On February 16, 2022, the State filed a motion for termination of Cruzita's parental rights to Ekko. The motion alleged that Ekko was a juvenile within the meaning of Neb. Rev. Stat. § 43-292(2) (Reissue 2016) because Cruzita had substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection, and that Ekko was a juvenile within the meaning of § 43-292(7) because she had been out of the home for more than 15 of the most recent 22 months. The motion also alleged that it was in Ekko's best interest to terminate Cruzita's parental rights.

On April 1, 2022, Cruzita filed a motion for visitation pending appellate process seeking an order continuing her supervised visitation pending the appellate process should her parental rights be terminated.

Trial on the motion for termination of parental rights, as well as Cruzita's motion for continued visitation, was held on multiple days in April, June, and July 2022.

The State's first witness was Dylan Tomanek, the case manager from April 2019 to February 2020. He testified that Cruzita's visits with Ekko were supervised the entire time he was assigned to the case. He testified that visits had to stop for a short time in July 2019 because Cruzita was briefly incarcerated. At one point visits were moved outside the home because of unsanitary conditions.

Tomanek testified that Cruzita completed a chemical dependency evaluation and had started outpatient treatment that was recommended. He testified that domestic violence was a concern based on previous intakes of domestic violence between Cruzita and Ekko's father. Toward the end of 2019, Ekko's father was incarcerated for assaulting Cruzita. While Tomanek was assigned to the case Cruzita completed a domestic violence program through one organization and later participated in another domestic violence program through a different organization.

At the beginning of Tomanek's case management, Cruzita had positive urinalysis tests for marijuana and alcohol and she admitted to Tomanek that she was continuing to use marijuana. She was also discharged from one testing agency for missing tests. Tomanek testified that Cruzita started testing clean at some point after she entered the Lydia House, a homeless shelter, in November 2019.

During the time Tomanek was the case manager, Cruzita also participated in programming for substance abuse and mental health and had been working with in-home services, including supervised visitation and family support. Cruzita was also participating in intensive outpatient

treatment and had started participating in child-parent psychotherapy with Ekko and Ekko's therapist.

Tomanek testified that at the time of his last court report in January 2020, Cruzita was in full compliance with the court orders in place at the time. He recommended that Cruzita have unsupervised visits with Ekko, but he did not know if her visits ever became unsupervised.

Audrey Stevenson was Ekko's case manager for several months in the spring/summer 2020, and then again starting in February 2021. She continued to be the case manager at the time of trial. Stevenson testified that when she took over as the case manager in 2020, Cruzita was having unsupervised visits. Shortly thereafter, the visits went back to supervised because Cruzita had a relapse with alcohol. Specifically, in May 2020 she and her husband at the time, Dean Smith, had been drinking and got into a fight. Cruzita was arrested and incarcerated for disturbing the peace and assaulting Smith.

Stevenson testified that there had been a previous domestic violence incident between Cruzita and Smith in December 2019 where Smith assaulted Cruzita. Stevenson testified that the domestic violence between Cruzita and Smith was concerning because there had also been domestic violence in her relationship with Ekko's father. She stated it was also concerning because Cruzita had recently participated in a domestic violence education program. She also testified that domestic violence is a safety threat to children, putting them at risk for harm. Stevenson testified that during the time she was assigned to the case in 2020, Cruzita was still married to and living with Smith.

When Stevenson got the case back in February 2021, Cruzita's visits were still supervised and the number of visits per week had been reduced from what they had been when she had the case in 2020. For the first several months, Cruzita was complying with all court orders and maintaining contact with Stevenson. She had also completed her GED. Stevenson testified that her main concern at that time was the length of time the case had been open and the fact that visits were still being supervised. She stated that Ekko was having an increase in behaviors before and after visits, and such dysregulated behavior was concerning because visits had been occurring for a long time. Stevenson viewed Ekko's behavior as a barrier to reunification.

At the time Stevenson prepared her November 2021 court report, Cruzita was still complying with court orders and maintaining good communication with Stevenson. Cruzita had been discharged by her individual therapist in July 2021 for attendance issues, but she had reengaged in therapy with a new therapist. A psychological and parenting assessment had been ordered in early 2020 and originally scheduled in November 2021. Cruzita rescheduled the assessment twice and it had not been completed at the time of Stevenson's testimony.

Stevenson testified that in September 2021 Cruzita told her she was filing for divorce from Smith because she did not want to jeopardize reunifying with Ekko. About two months later, she admitted that she and Ekko had contact with Smith in late November 2021.

In October 2021 Cruzita's visits were changed to unsupervised, but she subsequently missed two visits on November 14 and 16. She also missed a urinalysis test on November 17. Visits were changed back to supervised. Stevenson testified that after visits once again became supervised, Cruzita's communication with her declined. Cruzita has since become hostile toward her, cusses at her, and has ended phone conversations by hanging up on her.

Stevenson testified that after the motion for termination was filed in February 2022, Cruzita started talking with Ekko at visits about the court case. Stevenson stated this was inappropriate and Cruzita had not done this previously. Cruzita also made two calls to Child Protective Services alleging that Ekko had disclosed physical and verbal abuse by the foster parent. She had not made any abuse allegations before the motion for termination was filed.

Stevenson testified that as of the date of her testimony, Cruzita was following the court's orders, but Ekko's mental and emotional health were still a barrier to reunification. She testified that there had not been sufficient progress in Ekko's trauma therapy. Stevenson testified that Ekko has always displayed aggressive behaviors and some sexualized behaviors. She has trouble following instructions and listening to teachers. There also have been incidents where Ekko spit on friends at school.

Stevenson testified that Cruzita has had periods of ups and downs over the past three years, including being incarcerated twice that she knew of for short periods of time, and being inconsistent in her sobriety. She also noted that visits were still being supervised after three years and Cruzita was still married to Smith as far as she knew. Stevenson testified it would be in Ekko's best interests to terminate Cruzita's rights.

Candace Manchester provided individual therapy to Cruzita from June 2020 to July 2021. In the summary of her therapeutic interaction with Cruzita, Manchester noted that Cruzita had reported instances of mutual physical, verbal, and emotional abuse throughout her relationship with Smith, and had identified similarities between her relationships with Ekko's father and with Smith. Manchester stated that Cruzita was aware of her pattern of returning to unhealthy relationships as well as the history of those relationships not having a positive outcome for her, but she continued to engage in this pattern as evidenced by her relationship with Smith.

Manchester also stated in her summary that while treating Cruzita she self-reported a lapse in sobriety in October 2020 which led to an altercation with Smith and resulted in her arrest. She subsequently completed a 12-week outpatient relapse prevention program and in March 2021 began participating in Alcoholics Anonymous (AA) meetings. Cruzita was separated from Smith during this time and Manchester stated that Cruzita was the most stable she had been. However, in May 2021, Cruzita informed Manchester that she had reunited with Smith. Manchester testified that Cruzita had a "significant backslide" after reunifying with him. Manchester stated that she no longer prioritized her own goals, her engagement in therapy, and her ability to build a support system outside of him. Cruzita was involuntarily discharged from services in July 2021 based on her failure to adhere to the attendance policy. At the time of her discharge, Cruzita and Smith were living together, working at the same location, and their AA sponsors were married to each other.

Tiffanie Carmichael, the manager of the apartment building where Cruzita lived for a period of time, testified that between November 2021 and February 2022 she often saw a male matching Smith's general description coming and going from Cruzita's apartment. In February 2022, Carmichael heard Cruzita and a male arguing and yelling. She testified that there had been previous reports from tenants about hearing arguing in Cruzita's apartment, and in December 2021 one of the tenants called the police because of the arguing. Cruzita was evicted in February 2022 for failing to pay rent.

Morgan Anderson began supervising Cruzita's visits in February 2022. She testified that she had observed positive interactions between Cruzita and Ekko. Anderson stated that Cruzita

was patient with Ekko and her interaction was loving and playful. She also testified that Cruzita provides age-appropriate activities and she has not seen any safety issues. Anderson testified that there is a bond between Cruzita and Ekko.

Lorey Kirstine, Ekko's foster mother, testified that Ekko came to live with her on March 29, 2019, when she was 2 years old. In the first few days, Ekko had nightmares or night terrors, wanted to sleep on the floor rather than the bed, would try to gag herself, and would try to suffocate herself by placing her hands over her mouth. She would also try to bite, hit, and spit at Kirstine. Kirstine testified that Cruzita attended two or three of Ekko's medical, dental, or vision appointments in 2019, but had not attended any since.

Kirstine testified that Ekko's behavior was aggressive after visits. She would try to bite, scratch, and spit on Kirstine. She also has trouble sleeping. Kirstine testified that these behaviors improved when there were gaps in visitation. Kirstine also testified that when unsupervised visits occurred in October 2021, Ekko's sleep issues became worse, and her sexualized behavior intensified.

Kirstine testified that in the two months prior to her testimony, Ekko's behavior had been very aggressive, she was using mean words, and was being disrespectful, both at home and at school. She was also kicking, choking, and spitting on students at school. Ekko would also tell Kirstine that everything was her fault. The visitation worker at the time also testified that Ekko's behavior at visits had escalated.

Lesley Turner had been Ekko's therapist since August 2019. She diagnosed her with post-traumatic stress disorder. Cruzita told Turner that Ekko had witnessed significant domestic violence.

Turner recommended that there be no contact between Ekko and Smith based on the history of domestic violence between Cruzita and Smith. At some point, Cruzita told her she was not going to have a relationship with Smith because she wanted to put her child first. In November 2021 Turner learned that there had been contact between Ekko and Smith during a visit and visits went back to supervised. Turner testified she would be concerned if Cruzita was still having contact with Smith due to the history of domestic violence.

Turner testified that in the past couple months before her testimony, Ekko's behaviors had regressed. She was more verbally and physically aggressive in the foster home and at school. She also testified that despite significant progress at one point, at the time of trial Ekko was "significantly dysregulated."

Turner testified that although there had been progress by both Cruzita and Ekko and significant improvements in their relationship, there continued to be barriers to reunification. She testified that there was a pattern of inconsistency as well as a pattern of lack of reliability and stability within the relationship that caused Ekko to continue to feel "confused and torn." Ekko also continued to be dysregulated, which was escalating. Turner also had concerns about Cruzita's lack of implementation of techniques she has been taught after three years.

Turner stated that the relationship and attachment between Cruzita and Ekko is strong, and Ekko appears happy and comfortable when she is with Cruzita. She also testified that a feature of their attachment is that they have a trauma bond, meaning they share a similar traumatizing experience. Turner testified that having a trauma bond is not a healthy attachment.

Turner testified that in her professional opinion, it was in Ekko's best interests to stop visits with Cruzita because ongoing visitation was potentially harmful to Ekko based on the visitation notes she had seen recently. She stated it was important for Ekko to have stability and consistency.

After the State rested, Cruzita presented her own evidence. The evidence showed that between fall 2019 and May 2020, Cruzita was compliant with what was asked of her, she was meeting her goals and made progress toward reunification. During that time, her number of visits per week increased.

Cruzita also presented evidence to show that between December 2021 and April 2022, Cruzita's apartment was clean, and she provided a safe and appropriate environment for Ekko. Ekko was happy and excited to see Cruzita, and Cruzita was patient and loving with Ekko and showed her physical affection.

Carolyn Cichos, who had been Cruzita's therapist since July 2021, also testified. Cichos testified that in Cruzita's sessions they had addressed Cruzita's childhood trauma and past domestic violence, as well as working on emotional dysregulation and maintaining sobriety. She testified that Cruzita completed her initial treatment goals in three months. At that point they discussed discharging Cruzita from therapy, but Cruzita decided she wanted to continue and work on new goals. Cichos stated Cruzita was motivated to address issues, genuine in her interactions with Cichos, forthcoming with information, and had shown significant progress.

The evidence also showed that at least since July 2020 Cruzita had been compliant with submitting to urinalysis testing. She had multiple presumptive positive tests in July and August 2020, and she admitted to using marijuana and alcohol at that time. Cruzita also had multiple presumptive positive tests for amphetamines between May 2021 and June 2022, but those results were attributed to a prescription medication Cruzita was taking.

On rebuttal, the State presented evidence that Cruzita had three confirmed positive urinalysis tests for cocaine, two in April 2022 and one in May 2022. There was also another confirmed positive urinalysis test for marijuana in April 2022. Cruzita's case worker at the time of trial testified that she had ongoing concerns about Cruzita's drug use.

Dr. Theodore DeLaet, a psychologist, testified as a rebuttal witness for the State. He conducted a forensic psychological and parenting risk assessment of Cruzita in May 2022, after the termination trial had already begun. The assessment had been previously scheduled twice but Cruzita missed both appointments.

In his assessment DeLaet rated Cruzita at "moderate-high risk to engage in future child maltreatment." He determined that she has substance abuse disorders for alcohol and cocaine use. He noted that substance use had been problematic for her since her pre-teen years and had required multiple substance use treatments. He testified that she was at high risk to have future problems with substance use, requiring ongoing management. In his report he stated that he found her prognosis to maintain sobriety was "guarded." DeLaet also noted domestic violence had been an issue in Cruzita's romantic relationships and found this to be a risk elevation factor toward future child maltreatment.

DeLaet recommended ongoing psychiatric medication management; sobriety, noting that her relapse potential remains elevated; and outpatient mental health therapy, noting she is at an elevated risk to enter a new or reenter a prior abusive relationship. His report further stated that

although he deferred best interests' decisions to the court, he "recommend[ed] proceeding with High Caution toward any reunification efforts of [Cruzita] with [Ekko]."

Following trial, the juvenile court entered an order terminating Cruzita's parental rights to Ekko. The court found that Ekko was within the meaning of § 43-292(2) and (7) by clear and convincing evidence, and that it was in her best interests to terminate Cruzita's parental rights. The court also denied Cruzita's motion for continued visitation with Ekko pending an appeal. The court further stated that Cruzita "will have therapeutic contact with [Ekko] for the purpose of a final visit or visits at the discretion of the minor child's therapist."

## ASSIGNMENTS OF ERROR

Cruzita assigns that the juvenile court erred in (1) finding that termination was in Ekko's best interests, (2) finding that no beneficial relationship existed between her and Ekko, and (3) delegating the decision on final visitation between her and Ekko to the discretion of Ekko's therapist.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Statutory Grounds for Termination.*

The juvenile court found that the State proved by clear and convincing evidence that statutory grounds existed to terminate her parental rights under § 43-292(2) and (7). For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019), *review denied* (Sept. 26, 2019). The State must prove these facts by clear and convincing evidence. *Id.*

Cruzita does not assign as error the juvenile court's finding that the State met its burden to prove that statutory grounds existed to terminate under § 43-292(2) and (7). However, for the sake of completeness, we address whether a statutory ground to terminate existed.

Subsection (7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al., supra.* In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *In re Interest of Becka P. et al., supra.*

Cruzita admits that Ekko has been out of her home for more than 15 of the most recent 22 months. At the time the State filed the motion for termination of parental rights, Ekko had been out of Cruzita's home for 35 months and had never returned to her care during that time. Therefore, the statutory requirement for termination under § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.* Because we conclude that the State presented clear and convincing evidence that grounds to terminate existed under § 43-292(7), we need not address the other statutory grounds.

*Best Interests.*

Cruzita assigns that the juvenile court erred in finding that the State proved by clear and convincing evidence that it was in Ekko's best interests to terminate her parental rights. She also assigns that the juvenile court erred in finding that no beneficial relationship existed between Ekko and Cruzita. This assignment of error relates to best interests and will be addressed accordingly.

Under § 43-292, in addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests' analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

In cases where termination of parental rights is based on § 43-292(7), appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is in fact in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019), *review denied* (Sept. 26, 2019). The evidence adduced to prove termination on any statutory ground other than § 43-292(7) is highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. See *In re Interest of Shelby L.*, 270 Neb. 150, 699 N.W.2d 392 (2005).

Ekko had been out of her mother's home for 35 months at the time the motion to terminate was filed. Ekko was removed when she was two years' old and was removed as a result of Cruzita driving under the influence with Ekko in the vehicle. Since that time, Cruzita has struggled with her sobriety, having periods of success followed by relapses. She tested positive for cocaine three times in April and May 2022, around the same time the termination trial had started. She also tested positive for marijuana in April 2022.

DeLaet, who conducted his psychological and parenting risk assessment after the termination trial started, determined that Cruzita had substance abuse disorders for alcohol and cocaine use and noted that her substance use had been problematic for her since her pre-teen years. He found her prognosis to maintain sobriety was "guarded."

After three years of services and programs provided to Cruzita, visits between her and Ekko continued to be supervised. There have been periods of time where visits were switched to unsupervised, but this arrangement would never last long and visits would change back to supervised. Turner, Ekko's therapist, testified that in her professional opinion, it was in Ekko's best interests for visits with Cruzita to stop because ongoing visits were potentially harmful to Ekko based on the visitation notes she had seen recently. Further, as the juvenile court found, "liberalizing visitation or changing placement would require a substantial amount of progress by the mother and would take a substantial amount of time." It is uncertain if this progress would ever take place.

Cruzita has a history of being involved in abusive relationships. Her relationship with Ekko's father involved domestic abuse and she had been in a similar relationship with Smith. Manchester testified that Cruzita is aware of her pattern of returning to unhealthy relationships, but she continued to engage in this pattern. The domestic abuse with Smith was mutual at times, leading to Cruzita being arrested in May and October 2020. There was testimony from Cruzita's apartment manager, Carmichael, that indicated Cruzita was possibly having contact with Smith between November 2021 and February 2022. If the male at her apartment was not Smith, it was another male she had been arguing with on multiple occasions, leading to the police being called on one occasion. DeLaet found Cruzita's history of abusive relationships to be a risk elevation factor toward future child maltreatment.

There was also evidence that Ekko's behavior around the time of trial had escalated. Kirstine, the foster mother, testified that in the two months prior to her testimony, Ekko had become very aggressive, was using mean words, and was being disrespectful, both at home and at school. The visitation worker at the time also testified that Ekko's behavior at visits had escalated. Turner testified that in the past couple months before her testimony, Ekko's behaviors had regressed. She was more verbally and physically aggressive in the foster home and at school. She also testified that despite significant progress at one point, at the time of trial Ekko was "significantly dysregulated."

Turner testified that there continued to be barriers to reunification. She testified that there was a pattern of inconsistency and a pattern of lack of reliability and stability within the relationship that caused Ekko to continue to feel "confused and torn." Turner also had concerns about Cruzita's lack of implementation of techniques she has been taught after three years.

DeLaet cautioned the court to proceed with "high caution" toward any reunification efforts between Cruzita with Ekko. Stevenson, the case manager at the time of trial, testified it would be in Ekko's best interests to terminate Cruzita's rights.

As previously stated, Cruzita assigns that the juvenile court erred in finding that no beneficial relationship existed between Cruzita and Ekko. The court explained that Ekko's relationship with her mother continues to cause her strain and stress and fills her life with turmoil. There was testimony from various witnesses that Cruzita and Ekko have a bond and that Cruzita is loving, patient, and affectionate with Ekko. The juvenile court acknowledged that there was a

bond between Ekko and Cruzita. However, this does not outweigh the other considerations regarding Ekko's best interests.

It is well established that it is in the best interests of the child to terminate the parent's rights where the parent is unable or unwilling to rehabilitate themselves in a reasonable time. See *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015). Cruzita had nearly three years to rehabilitate herself and she is still unable to provide a safe and stable environment for Ekko. We find there was clear and convincing evidence to show that Cruzita was unfit and that terminating her parental rights was in Ekko's best interests.

*Goodbye/Final Visitation.*

Cruzita assigns that the juvenile court erred in delegating the decision on final visitation between her and Ekko to the discretion of Ekko's therapist. The court denied Cruzita's motion for continued visitation pending appeal, but further ordered that Cruzita could have therapeutic contact with Ekko for the purpose of a "goodbye" or final visit or visits at the discretion of Ekko's therapist.

This court has held that the juvenile court retains jurisdiction to award continued contact to a parent whose parental rights have been terminated, while recognizing that once parental rights are terminated, a parent has no standing to assert entitlement to continued visitation. See *In re Interest of Stacey D. & Shannon D.*, 12 Neb. App. 707, 684 N.W.2d 594 (2004).

Parental visitation rights, as a subject within the Nebraska Juvenile Code, are matters for judicial determination. *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990)*.* The rule that custody and visitation of minor children are to be determined on the basis of their best interests clearly envisions an independent inquiry by the court. *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995).

A trial court has a nondelegable duty to determine questions of custody and parenting time of minor children according to their best interests. *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019). The authority to determine custody and visitation cannot be delegated because it is a judicial function. *Id.*

We conclude that the juvenile court improperly delegated its authority regarding further contact between Ekko and Cruzita to Ekko's therapist. We further note that Ekko's therapist recommended at trial there should be no further visits because ongoing visitation was potentially harmful to Ekko. A final visit between Ekko and Cruzita was not an issue at trial and there was no evidence that a final visit would be in Ekko's best interests. Accordingly, we conclude the court erred in making any ruling regarding a final visit or visits. Therefore, we modify the order terminating Cruzita's parental rights to remove any reference to a "goodbye visit" or a "final visit" between Ekko and Cruzita as recommended by or at the discretion of Ekko's therapist.

## CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds for termination of Cruzita's parental rights existed under § 43-292(7) and that termination of her parental rights was in Ekko's best interests. Further, we modify the August 12, 2022, termination order to remove any reference to a "goodbye visit" or a "final visit" between Ekko and Cruzita as

recommended by or at the discretion of Ekko's therapist. The juvenile court's order is affirmed as modified.

 AFFIRMED AS MODIFIED.